UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| BING CHEN and JIE CHEN, | ) |
| Plaintiffs, | ) ) ) |
| v. | ) CASE NO. 1:25-cv-00330-RLY-MJD ) |
| UNIVERSITY OF NOTRE DAME, | ) ) |
| Defendant. | ) |

**BRIEF IN SUPPORT OF MOTION TO DISMISS COMPLAINT**

## I. INTRODUCTION

The Notre Dame Law School Religious Liberty Clinic ("Notre Dame Clinic") was the principal contributor to an amicus brief filed in an Argentinian court concerning the mistreatment of Uyghurs, a minority group in China, by the Chinese government. Because Plaintiffs contend that all reports concerning mistreatment of the Uyghurs by the Chinese government "are not fact" but instead "are all false," Plaintiffs have sued the University of Notre Dame ("Notre Dame") for group defamation (libel) of the Chinese people, racial discrimination, and emotional distress "for the Chinese people—mainly Han people—and Chinese Americans." *Compl*. ¶¶ 1, 93, 96, 101-09.

Many of the allegations in Plaintiffs' Complaint are drawn from a 2022 lawsuit filed by Plaintiff Bing Chen ("Bing"), first through his non-profit Pacific Research and Education Institute ("PREI"), then later as a *pro se* litigant, against former President Biden and thirty-six (36) other governmental figures, human rights organizations, and news agencies. *See Complaint* (DE #1) in *Chen v. Biden*, 8:22-cv-25-PX (D. Md. 2022) (hereinafter *Biden*). Like this lawsuit, the 2022 *Biden* lawsuit also alleged group defamation (libel) of the Chinese people, racial discrimination, and emotional distress "for the Chinese people—mainly Han people—and Chinese Americans." *Biden* DE #1 ¶¶ 212-19. On March 9, 2022, the District of Maryland dismissed the 2022 complaint for lack of standing under Rule 12(b)(1). *See Pacific Research & Ed. Institute v. Biden*, 2022 WL 1182928 (D. Md. Mar. 9, 2022). Thereafter, the Fourth Circuit Court of Appeals affirmed the dismissal of that complaint. *See Chen v. Biden*, 2022 WL 3584868 (4th Cir. Aug. 22, 2022).

Plaintiffs' Complaint here should likewise be dismissed for lack of standing under Rule 12(b)(1). It should also be dismissed under Rule 12(b)(6) because Plaintiffs have not alleged defamation. Indiana does not recognize claims for group libel. In addition, statements made in, or related to, legal proceedings cannot be the basis of a defamation claim. Plaintiffs also have not, and cannot, plead claims for racial discrimination or emotional distress.

## II.     FACTUAL BACKGROUND

Plaintiff Bing is a Chinese lawyer who settled in the United States in 2014. *Compl.* ¶ 2.1. He donated funds to PREI, a non-party to this case, where Bing also "serves as the chief researcher."[1] *Id*. The second Plaintiff in this case, Jie Chen ("Jie"), "lives in Maryland and works in logistics." *Id*. ¶2.2.  Plaintiffs' Complaint alleges: "our lawsuit is primarily for ourselves and also represents all Chinese Americans and mainland Chinese compatriots.  We also represent all Americans who have been deceived by the Xinjiang issue." *Id*. ¶ 99.

The "Xinjiang issue" alleged in the Complaint is the mistreatment of the Uyghurs in the "Xinjiang Uyghur Autonomous Region in the People's Republic of China" ("Xinjiang"). *Id.* ¶ 6. Throughout the Complaint, Plaintiffs allege that reports of China's mistreatment of the Uyghurs "are all false," that "[t]here is no such thing as being abused" in Xinjiang, and that "China's Xinjiang genocide, crimes against humanity, and forced labor were staged" and a "hoax" created by "lies openly," "fake news," "false victims" and "false reports," among other allegedly false information, testimony, and documents. *Id*. ¶1, 19, 21-22.

The Notre Dame Clinic was the "principal contributor" to a February 2023 amicus brief, attached as **Exhibit A,**  filed "with the courts in Argentina" related to the reported mistreatment of Uyghurs in China.[2]  *Id.* ¶¶ 30, 32.  Among other amici, the Notre Dame Clinic prepared the brief on behalf of Nury Turkel, a Uyghur-American lawyer sued by Plaintiff Bing in the 2022 *Biden*

---

[1] In the *Biden* complaint, Bing alleges that he is also a "current director[]" of PREI.  *Biden* DE #1 ¶ 212.

[2] **Exhibit A**, which is quoted extensively in the Complaint, identifies the amici on whose behalf that amicus brief was prepared. The Court can take judicial notice of the existence of the Argentinian litigation and the identities of the amici. *In re FedEx Ground Package Sys., Inc. Emp. Litig*., 2010 WL 1253891, at *4 (N.D. Ind. Mar. 29, 2010); *see also Credico v. Navarrette*, 2025 WL 711490, at *2 (S.D. Ind. Mar. 5, 2025).  In addition, the Court can consider the amicus brief, Notre Dame Clinic website (**Exhibit B**), and the articles appended to this motion as **Exhibits C** and **D**, all of which are quoted in the Complaint and central to Plaintiffs' claims, without converting this motion to dismiss into a motion for summary judgment. *See* Fed. R. Civ. P. 10(c); *Wright v. Associated Ins. Co., Inc*., 29 F.3d 1244, 1247-48 (7th Cir. 1994); *Williams v. Curran*, 714 F.3d 432, 435-36 (7th Cir. 2013).

lawsuit. *See* **Exhibit A**; *see also Biden Compl*., DE #1 p. 11 & ¶ 58 (identifying Turkel as a "defendant"). Because Plaintiffs allege that such mistreatment is the "scam of the century and international farce," Plaintiffs allege that the amicus brief is rife with libelous statements. *Id.* ¶¶ 21, 29-45, 51, 71, 102. Plaintiffs also complain about statements made on the Notre Dame Clinic's website (**Exhibit B**) about the amicus brief. *Id.* ¶ 46.

The Complaint additionally quotes an article on the Notre Dame Law School's website reporting on a 2022 event in which Mr. Turkel shared, through a public conversation with a Notre Dame professor, "details on China's hostile treatment towards Uyghur Muslims in Xinjiang." *Id.* ¶¶ 47-48. **Exhibit C** is a copy of this article, which is quoted in the Complaint ¶¶ 47-48. *See supra* at 2 n.2. Plaintiffs further quote a 2021 article **(Exhibit D)** from the Notre Dame Law School website announcing that Mr. Turkel would receive the first Notre Dame Prize for Religious Liberty. *See id; Compl*. ¶ 49. Finally, the Complaint states that "it was disclosed" on the Notre Dame website that in 2023, Notre Dame organized an event in the United Kingdom titled "Honoring the Uyghur People Seeking Accountability Amidst the Uyghur Genocide on the 75th Anniversary of the Genocide Convention." *Compl*. ¶ 50-51. Depicting an image allegedly related to this event, Plaintiffs ask: "Why are they singing and dancing about [sic] when they're being 'genocided'? [sic]." *Id.* ¶50.

Plaintiffs demand that Notre Dame withdraw the amicus brief and "delete the defendant's false information on the internet," issue a public apology, and revoke Mr. Turkel's Notre Dame Prize for Religious Liberty. *Compl*. ¶ 111. Plaintiffs further request identical monetary relief as Bing requested in the dismissed *Biden* Complaint, being a combined $1.741 billion dollars as an "apology" to "every American and Pacific Island[er] . . . living in the United States" and "every Chinese people living in mainland China," paid directly to Bing's non-profit, PREI. *Id.*

## III. LEGAL STANDARDS

### A. Standing

"Article III of the United States Constitution demands that federal courts adjudicate only 'actual, ongoing cases or controversies.'" *Biden*, 2022 WL 1182928, at *2 (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990)). "A motion to dismiss for lack of standing is a challenge to the court's subject matter jurisdiction under Rule 12(b)(1)." *Smith v. GC Servs. Ltd. P'ship*, No. 1:16-cv-01897-RLY-DML, 2017 WL 2629476, at *1 (S.D. Ind. June 19, 2017). "A court does not have subject matter jurisdiction over claims by a plaintiff that does not have standing." *Ind. v. Biden*, 652 F. Supp. 3d 995, 999 n.3 (S.D. Ind. 2023) (citing *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021)). The Supreme Court has explained that where, as here, a case is at the pleading stage, it is the plaintiff's burden to "clearly . . . allege facts demonstrating" the elements of standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)) (alterations in original); *see Garrison v. U.S. Dept. of Educ.*, 636 F. Supp. 3d 935, 939 (S.D. Ind. 2022).

To establish Article III standing, Plaintiffs must show: (1) that they have suffered an injury-in-fact; (2) that is fairly traceable to the Defendant's challenged conduct; and (3) the injury will likely be redressed by a favorable decision. *Manassa v. Nat'l Collegiate Athletic Ass'n.*, 2021 WL 12231121, at *4 (S.D. Ind. Sept. 13, 2021) (citing *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560 (1992)). An injury-in-fact requires "an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Id.* (cleaned up).

### B. Failure to state a claim

"To avoid dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must contain 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Catinella v. Cty. Of Cook, Ill.*, 881 F.3d 514,

4

517 (7th Cir. 2018) (citations omitted). "To state a claim for relief, a complaint must provide more than 'abstract recitations of the elements of a cause of action or conclusory legal statements.' Instead, a plausible claim must include 'factual content' sufficient to allow the court 'to draw the reasonable inference that the defendant is liable for the alleged misconduct.'" *Charleston v. Bd. of Trustees of Univ. of Ill. at Chicago*, 741 F.3d 769, 772 (7th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Determining plausibility is a context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Yudkin v. Rubenstein*, 2015 WL 13739360, at *4 (S.D. Ind. Sept. 12, 2015) (cleaned up). Notably, where the factual content of a claim is consistent with unlawful behavior, but "compatible with" and "more likely explained by, lawful…behavior" the court will hold the facts as pled do not plausibly state a claim for relief. *Iqbal*, 556 U.S. at 680.

## IV.   ARGUMENT

Plaintiffs' Complaint fails all three elements of standing: injury-in-fact, traceability, and redressability. In addition, Plaintiffs have not and cannot plead claims for defamation, racial discrimination, or emotional distress.

### A. Plaintiffs lack standing.

When dismissing Bing's 2022 *Biden* complaint under Rule 12(b)(1) for lack of standing, the *Biden* court observed:

> Although the Complaint is replete with facts alleging mistreatment of Chinese nationals, none of the allegations involve Bing. The Complaint is devoid of any alleged harm that he has suffered as a result of the claimed wrongdoing. As to the remaining standing requirements, traceability or redressability, Bing expressly seeks relief not for himself but for injured third parties. Viewing the Complaint most favorably to him, Bing lacks standing to pursue this matter. The Complaint must therefore be dismissed.

*Biden*, 2022 WL 1182928, at *2. Plaintiffs' similar complaint here fails under Rule 12(b)(1) for

5

the same reasons.

1. <u>No injury in fact</u>

"An Article III court is not a legislative assembly, a town square, or a faculty lounge." *Food & Drug Admin. v. Alliance for Hippocratic Med.*, 602 U.S. 367, 382 (2024) (quoting *Allen v. Wright*, 468 U.S. 737, 756 (1984), *abrogated on other grounds by Lexmark Intern., Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129 (2015)). "The injury in fact requirement prevents the federal courts from becoming a 'vehicle for the vindication of the value interests of concerned bystanders.'" *Id.*

An "injury in fact" is "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Ind. Petroleum Marketers & Convenience Store Ass'n v. Huskey*, 2014 WL 2721804, at *8 (S.D. Ind. June 16, 2014), *aff'd sub nom. Ind. Petroleum Marketers & Convenience Store Ass'n v. Cook*, 808 F.3d 318 (7th Cir. 2015). A "particularized" injury must "affect the plaintiff in a personal and individual way."[3] *Spokeo*, 578 U.S. at 339. It cannot simply be a "generalized grievance" that is "undifferentiated and 'common to all members of the public.'" *U.S. v. Richardson*, 418 U.S. 166, 176 (1974) (citation omitted). For example, a plaintiff's feelings of "shame, humiliation, embarrassment, anger, disappointment, and worry" alleged to be "naturally associated with a person with physical disabilities being denied access" was "too remote and impersonal to be particular to [the] Plaintiff" in *Mortland v. IK Onkar Hospitality LLC*, 775 F. Supp.3d 1024, 1031 (N.D. Ind. Mar. 27, 2025) (disabled plaintiff's upset feelings caused by architectural barriers at a

---

[3] Moreover, as pro se litigants, Plaintiffs "cannot bring lawsuits on behalf of anyone except" themselves. *St. Angelo v. Barr*, 2020 WL 881697, at *6 (S.D. Ind. Feb. 24, 2020); *see also Merriweather v. Parks*, 2022 WL 1538615, at *1 (N.D. Ind. May 16, 2022)("Mr. Merriweather cannot represent the interests of the prison's Islamic community or any other inmate.").

hotel lacked "the concreteness and particularity necessary to establish an injury-in-fact").

A "concrete" injury is one that "must actually exist," is "real," and "not abstract." *Id.* (cleaned up). "An abstract, hypothetical, maybe-it happened, maybe-it-didn't injury to reputation doesn't open the door to the federal courthouse." *Bueno v. Experian Information Solutions, Inc.*, 2024 WL 383464, at *10 (N.D. Ill. Feb. 1, 2024). For example, "abstract psychic harm" such as being "'upset by reading about the damage caused that fine old vineyard in Burgundy by a band of marauding teetotalers'" does not confer standing under Article III. *MainStreet Org. of Realtors v. Calumet City, Ill.*, 505 F.3d 742, 745 (7th Cir. 2007) (quoting *Aurora Loan Servs, Inc. v. Craddieth*, 442 F.3d 1018, 1024 (7th Cir. 2006)). Similarly, where a Title VI claim can be pursued (it cannot here), "'abstract stigmatic injury'" to racial identity is not a cognizable injury and does not provide standing. *Deemar v. Bd. of Ed. Of City of Evanston/Skokie*, 2024 WL 3757169, at *5 (N.D. Ill. Aug. 9, 2024) (quoting *Allen*, 468 U.S. at 755). Thus, a plaintiff fails to state a "concrete" injury where "messages concerning race and racism upset, offended, or stigmatized" him. *Id.* at *6. Moreover, the requirement that an injury be "imminent" is to "ensure that the alleged injury is not too speculative"—*i.e.*, that it is "*certainly* impending." *Lujan*, 504 U.S. at 564 n.2 (emphasis in original).

Here, the Complaint contains zero allegations specific to either Bing or Jie. *See generally Compl.* Instead, Plaintiffs plead reputational damage, distress, and stigma to an entire population—all combined 1.74 billion[4] mainland Chinese, Chinese Americans, and Pacific Islanders—which they plead, by extension, "therefore" impacts Plaintiffs as Chinese people who emigrated to America. For example, while Plaintiffs allege that "our lawsuit is primarily for ourselves," in the same breath they plead that it "also represents all Chinese Americans and

---

[4] This is more than 20% of the world's population of 8.14 billion. *See "World population,"* available at https://populationtoday.com/ (last visited August 26, 2025).

7

mainland Chinese compatriots. We also represent all Americans who have been deceived by the Xinjiang issue." *Id*. ¶ 99.  Plaintiffs similarly allege that Notre Dame's statements regarding treatment of Uyghurs by the Chinese government impact all Han Chinese, which Plaintiffs contend "make[] up over 91% of China's population," from which Plaintiffs "[t]herefore" conclude that they[5] have been "victims of these false accusations" in the form of damage to "social reputation," which makes them feel "angry and painful," and which impairs their ability to teach "children about racial identity." *Id.* ¶ 99.  They also conclusively allege: "The defendants deliberately fabricated or spread false information and spread lies that slander and demonise [sic] China and the Chinese people.  The plaintiff is also deeply harmed by this." *Id.* ¶ 71. Plaintiffs further assert: "This is not only defamatory falsehoods for the Chinese government, but also for the Chinese people—mainly Han people—and Chinese Americans, resulted [sic] in serious emotional distress. The plaintiffs are American persons[.]  It is a direct harm to us.  The defendant's actions caused damage to the reputation of plaintiffs." ¶ 96.  Plaintiffs complain that statements about the Uyghurs made by "many"—of which only one is "the defendant"—have been believed "by some Chinese children in the USA, causing them serious emotional distress and undermining their connection to their Chinese heritage. The plaintiffs encountered this problem." *Id*. ¶92. They also allege that such statements have been "psychologically harmful to the plaintiffs." *Id*. ¶ 93.  The relief Plaintiffs seek is for third parties and includes a public apology "to the Chinese and American people" and "$1.00 as an apology" for "every American and Pacific Islande[r]. . . living in the United States" and "to every Chinese people liv[ing] in mainland China." *Id*. ¶111.

These allegations assert injury to people *other than* Plaintiffs.  *See Biden*, 2022 WL 1182928, at *2.  Plaintiffs, as *pro se* litigants, cannot bring claims for injury to anyone but

---

[5] Plaintiffs nowhere allege that they are Han Chinese.

8

themselves. *Parks*, 2022 WL 1538615, at *1; *Barr*, 2020 WL 881697, at *6. But even if they could, Plaintiffs' allegations concerning harm to 1.74 billion mainland Chinese, Chinese Americans, and Pacific Islanders are exactly the kind of "generalized grievance" that is neither "concrete" nor "particularized" and so does not provide standing to these Plaintiffs, individually. *Richardson*, 418 U.S. at 176. The Complaint's limited references to Plaintiffs themselves amount to an expression of "abstract psychic harm," being the "shame, humiliation, embarrassment, anger, disappointment, and worry," created by reading reports of mistreatment of the Uyghurs by people who share the same cultural identity as Plaintiffs. *MainStreet*, 505 F.3d at 745; *Mortland*, 775 F. Supp.3d at 1031; *Deemar*, 2024 WL 3757169, at *5. But anger and distress because Plaintiffs believe reports about abuse *by* people in another country who are not Plaintiffs, *to* other people in that country who *also* are not Plaintiffs, is neither sufficiently particular nor concrete to constitute an injury-in-fact **to these Plaintiffs**. *See Alliance for Hippocratic Med.*, 602 U.S. at 382. This Court is not a town square or teacher's lounge, nor is it a Speaker's Corner for Plaintiffs to declaim their value interests.[6] *Id*.

2. <u>No Traceability.</u>

Plaintiffs' injury must be "fairly traceable to the defendant's allegedly *unlawful* conduct." *California v Texas*, 593 U.S. 659, 674 (2021) (emphasis in original). To be fairly traceable, the link "must not be too speculative or too attenuated." *Alliance for Hippocratic Med.*, 602 U.S. at 383. For example, the alleged injury is not "fairly traceable" if it is the "'result of the independent action of some third party not before the court'" rather than the allegedly illegal act of the defendant. *Pavlock v. Halcomb*, 35 F.4th 581, 590 (7th Cir. 2022)(quoting *Lujan*, 504 U.S. at 560).

---

[6] Speakers Corner is an area of Hyde Park in London, England in which speakers can orate on any topic. *See* https://en.wikipedia.org/wiki/Speakers%27_Corner (last visited August 26, 2025).

9

Here, even if Notre Dame's statements were unlawful (they are not), the crux of Plaintiffs' complaint is that 1.74 billion people were harmed because (1) the Notre Dame Clinic repeated and/or summarized, with citations,[7] publicly available information about the treatment of Uyghurs in a legal brief, *compare Compl*. ¶¶ 31-45 *with Exhibit A*; (2) the Notre Dame Clinic summarized language from that brief on its website, *compare Compl*. ¶46 (quoting Exhibit B) *with* Exhibit A p. 11-13; (3) Notre Dame Law School hosted a public discussion with Mr. Turkel, *Compl*. ¶¶ 47-48 (Exhibit C), (4) Notre Dame hosted an event in the United Kingdom honoring the Uyghurs, and (5) Notre Dame Law School gave Mr. Turkel an award (Exhibit D).  Notably, Plaintiff Bing already lost his lawsuit against many of the *sources* of the information cited by the Notre Dame Clinic in the amicus brief and related publications, such as Mr. Turkel, the United States Commission on International Religious Freedom, the Uyghur American Association, Radio Free Asia, the Uyghur Human Rights Project, BBC, CNN, New York Times, Washington Post, and others. *Biden*, 2022 WL 1182928, at *2 (finding that the *Biden* complaint failed all aspects of standing, including traceability, against the defendants sued); *also compare* defendants in Complaint, DE #1, *in Biden*, 8:22-cv-25-PX (D. Md. 2022) *with* sources listed in Exhibit A.  Plaintiffs' Complaint in this case is even more speculative and attenuated because it claims injury to 1.74 billion people because Notre Dame cited to, and repeated, the work of those dismissed defendants in the *Biden* case. Moreover, *none* of the statements with which Plaintiffs take issue, were directed at Plaintiffs themselves.  Nor does the Complaint plead, let alone plausibly plead, how Notre Dame hosting events or giving an award to Mr. Turkel harmed **them** personally. *Biden*, 2022 WL 1182928, at *2.

3. No redressability

The final element of standing is that the alleged injury would be redressed by the requested

---

[7] Exhibit A contains 194 footnoted citations.

10

relief. *Lujan*, 504 U.S. at 560. Here, Plaintiffs "must show that it is likely, as opposed to merely speculative, that the injury will be addressed by a favorable judicial decision." *Am. Fed'n of State, Cty & Mun. Employees, AFL-CIO v. Social Security Admin.,* 778 F. Supp.3d 685, 724 (D. Md. 2024) (cleaned up). "The 'very essence' of the redressability requirements is that '[r]elief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court.'" *Id*. (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998)).

Here, just as in the dismissed *Biden* complaint, Plaintiffs request that $1.74 billion be paid to Bing's non-profit, PREI, as an "apology" to various third parties, along with the revocation of the Notre Dame Prize for Religious Liberty to Mr. Turkel, withdrawal of the amicus brief filed in Argentina, and deletion of what Plaintiffs call "defendant's relevant false information on the Internet." *See Compl*. ¶¶ 111-12. None of this relief relates to Plaintiffs, because none of the alleged statements at issue, the award to Mr. Turkel, or events hosted by Notre Dame discuss, mention or identify Plaintiffs in any way. As such, the relief requested by Plaintiffs would not redress any alleged injury to them. *Biden*, 2022 WL 1182928, at *2.

For any and all of these reasons, Plaintiffs lack standing; therefore their Complaint must be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction.

### B. To the Extent Plaintiffs Attempt to Plead Defamation, Such Claims Must Be Dismissed

To the extent the Complaint can be construed to plead anything, Plaintiffs primarily attempt to plead defamation (libel). *See Compl*. ¶ 1 (citing 28 U.S.C. § 4101 defining "defamation"); ¶¶30-50 (itemizing various statements to which Plaintiffs object); *see also id.* ¶50 ("All of the above content [in paragraphs 30-50] . . . us[e] language that is sinful, shameless, vulgar, and pornographic, deliberately and falsely depicting Xinjiang in China as a living hell."). These claims must be dismissed because none of the alleged defamatory statements are about Plaintiffs, and

11

nearly all of the complained-of statements were made in the context of legal proceedings.

1. None of the Alleged Defamatory Statements Are About Plaintiffs

Among other criteria to state a claim for defamation, the alleged "[d]efamatory words are not actionable unless they refer to some ascertained or ascertainable person, ***and that person must be the plaintiff***." *Schrader v. Eli Lilly & Co.*, 639 N.E.2d 258, 261 (Ind. 1994) (emphasis added); *Lee v. Weston*, 402 N.E.2d 23, 26-90 (Ind. 1980). The concept of "group defamation" or "group libel" is not recognized in Indiana. *See Wabash Tax Serv. v. Stadler & Co., Inc.*, 2014 WL 3671014, at *3 (S.D. Ind. July 22, 2014) (collecting cases); *Gintert v. Howard Publications, Inc.*, 565 F. Supp. 829, 832 (N.D. Ind. 1983) ("The law is well settled that defamation of a large group gives rise to no cause of action on the part of an individual member of that group unless he can show special application of the defamatory matter to himself."); *Harvey v. Coffin*, 5 Blackf. 566, 567-69, 1841 WL 2517, at *1-2 (Ind. 1841) (the statement "I caught one of Coffin's boys stealing corn" is not actionable "if it is uncertain of whom the words were spoken"). This is because the tort of defamation "seeks to redress reputational harm suffered by *a person*." *Sanderson v. Ind. Soft Water Serv., Inc.*, 2004 WL 1784755, at* 6 (S.D. Ind. July 23, 2004)(emphasis in original) (judgment granted to Culligan because plaintiff failed to demonstrate that references to "magnetic companies" in Culligan advertising materials related to plaintiff or plaintiff's company, specifically).

None of the statements Plaintiffs complain about were made about Plaintiffs themselves. *See generally Exhibits* A-D, quoted in *Compl.* ¶¶ 30-50. Instead, Plaintiffs plead group defamation/libel of the Chinese government or people of Chinese descent. *See generally Compl.* Because such allegations do not state a cause of action, the Complaint should be dismissed. *Wabash*, 2014 WL 3671014, at *3; *Gintert*, 565 F. Supp. at 832; *Harvey*, 1841 WL 2517, at *1-2.

2. Statements Made In, And About, a Legal Brief Are Absolutely Privileged

Plaintiffs' Complaint also should be dismissed because it overwhelmingly complains about

12

statements made in, or about, legal proceedings in Argentina. Statements made "in the course of," "preliminary to," and "subsequent to" a judicial proceeding enjoy "an absolute privilege against defamation claims." *Yudkin*, 2015 WL 13739360, at *9; *Van Eaton v. Fink*, 697 N.E.2d 490, 494-95 (Ind. 1998).

"Indiana law has long recognized an absolute privilege that protects all relevant statements made in the course of a judicial proceeding, regardless of the truth or motive behind the statements." *Hartman v. Keri*, 883 N.E.2d 774, 777 (Ind. 2008); s*ee also Pack v. Middlebury Community Schs*, 990 F.3d 1013, 1022-23 (7th Cir. 2021); *Restatement (Second) of Torts* §587 (1977). The policy behind this privilege is that the "'public interest in the freedom of expression by participants in judicial proceedings. . . is so vital and necessary to the integrity of our judicial system that it must be made paramount to the right of the individual to a legal remedy when he has been wronged.'" *Heckler & Koch, Inc. v. German Sports Guns GmbH*, 71 F. Supp.3d 866, 879 (S.D. Ind. 2014) (quoting *Briggs v. Clinton Cty. Bank & Trust Co*., 452 N.E.2d 989, 997 (Ind Ct. App. 1983)).

Here, Plaintiffs' Complaint largely complains about statements made in the amicus brief (Exhibit A) and on the Notre Dame Clinic's website (Exhibit B) about the amicus brief. *See Compl.* ¶ 1 (citing 28 U.S.C. § 4101 defining "defamation"); ¶¶ 30-46. In addition to dozens of statements made in the amicus brief and index to that brief, Plaintiffs complain about two statements made in Exhibit B. *Id.* ¶ 46. First, Plaintiffs complain about the sentence in Exhibit B: "In what appears to be the largest incarceration of an ethnoreligious group since World War II, millions of Uyghurs have been subjected to re-education, rape, constant surveillance, and familial separation at the hands of the Chinese government." *Id*. This language comes directly from the amicus brief. *See* Exhibit A at 12 ("this appears to be the largest incarceration of an enthnoreligious group since

13

World War II"); *id.* at 11 ("millions of Uyghurs. . . have been subjected to"); *id.* at 12-13 (describing "child separation," "re-education," "rape" and "unrelenting surveillance" with citation to publicly available sources for those statements). Second, Plaintiffs complain that Exhibit B states: "This amicus brief filing is the latest effort undertaken by the [Notre Dame Clinic] to bring awareness to and encourage action against the atrocities enacted by the Chinese government." This sentence is under a headline concerning legal representation of the amici, titled "Notre Dame Law School Representation." *See* Exhibit B. To the extent that this sentence could be construed as a statement of fact rather than an explanation of Notre Dame's legal representation, this sentence merely summarizes what the amicus brief says in its introduction, supported by numerous third-party sources: "China has committed numerous atrocities against the Uyghur people." Exhibit A at 6.

All of the foregoing statements were made directly in the amicus brief and/or relay the "gist" of the amicus brief in an article about its presentation to the Argentinian Court on behalf of the amici. *See generally Exhibits A &B*. Such statements are privileged, as a matter of law.[8] *Yudkin*, 2015 WL 13739360, at *9; *Van Eaton*, 697 N.E.2d at 494-95.

Therefore, Plaintiffs' "defamation" or "group libel" claim must be dismissed.

**C. To the Extent Plaintiffs Attempt to Plead Racial Discrimination, Such Claims Must be Dismissed**

Plaintiffs briefly assert that "defendant and the associated personnel involved in this case lack rationality, violating the Civil Rights Act of 1964." *Compl.* ¶ 1. Plaintiffs further declare that Notre Dame's "actions regarding the Xinjiang issue violate the provisions of this law [Title VI],

---

[8] Plaintiffs' other complaints cannot fairly be construed as communications by Notre Dame that could form the basis for the libel claims Plaintiffs attempt to assert. *Compl.* ¶¶47-50. Certainly, giving Mr. Turkel an award in 2021, hosting an event in the United Kingdom that honored the Uyghurs, or hosting an event in 2022 in which Mr. Turkel shared his personal experiences, are not "*[c]ommunication[s]* with defamatory imputation'" by Notre Dame. *Wabash Tax Serv.,* 2014 WL 3671014, at *3 (emphasis added) (quoting *Kelley v. Tanoos*, 865 N.E.2d 593, 597 (Ind. 2007)).

14

causing harm and distress to, but not limited to, Chinese American students, researchers, and fair-minded individuals at the university, constituting an infringement." *Id.* ¶101. To the extent these vague assertions are meant to allege racial discrimination, such claim must be dismissed.

Title VI states: "No person in the United States shall, on the ground of race, color, or national origin, be excluded from *participation in, be denied the benefits of, or be subjected to discrimination in any program or activity receiving Federal financial assistance*." 42 U.S.C. §2000d (emphasis added). Among the many issues with Plaintiffs' opaque Complaint, Plaintiffs have not plead that **Plaintiffs** are participating in, or have been denied the benefit of, any program or activity of Notre Dame for which Notre Dame receives federal financial assistance. Again, Plaintiffs cannot bring a lawsuit on behalf of *other* people, such as "Chinese American students, researchers, and fair-minded individuals at the university." *Compl.* ¶ 101; *St. Angelo*, 2020 WL 881697, at *6; *Merriweather*, 2022 WL 1538615, at *1. Moreover, to the extent Plaintiffs are attempting to assert a race discrimination claim under 42 U.S.C. § 1981, there is no contract at issue in this case. *Thompson v. Trustees of Ind. Univ.*, 2025 WL 26672, at *6 (S.D. Ind. Jan. 3, 2025). To the extent Plaintiffs are attempting to assert a race discrimination claim under 42 U.S.C. §1983, Notre Dame is a "private Catholic research University" (*Compl.* ¶3)—not a state actor—nor have Plaintiffs alleged that Notre Dame has deprived them of "life, liberty, or property without due process of law." *See* 42 U.S.C. § 1983; *Nat'l Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179, 190-99 (1988) (state actor doctrine). In addition, the entire thrust of the Complaint is that Plaintiffs have suffered some kind of "abstract stigmatic injury" to their racial identity, which does not provide standing under Title VI. *Allen*, 468 U.S. at 755; *Deemar*, 2024 WL 3757169, at *5.

### D. To the Extent Plaintiffs Attempt to Plead a Negligent or Intentional Infliction of Emotional Distress Claim, Such A Claim Must be Dismissed

Plaintiffs allege that they suffer "serious emotional distress" because of the allegedly "false

15

statements" made by Notre Dame regarding the Chinese government's treatment of Uyghurs. *Compl.* ¶¶ 92, 96. To the extent these cursory references are an attempt to plead negligent infliction of emotional distress (NIED), that tort requires a "direct physical impact to the plaintiff." *See Yudkin*, 2015 WL 13739360, at * 11; *see also Shuamber v. Henderson*, 579 N.E.2d 452, 454 (Ind. 1991). "There is nothing in [Plaintiffs'] complaint suggestive of a direct physical impact, as required by Indiana law." *Yudkin*, 2015 WL 13739360. Indeed, any such inference would be facially absurd: Plaintiffs plead that they are in Maryland, Notre Dame is in Indiana, and that the harms alleged by them were because Mr. Turkel received an award from Notre Dame in 2021, Notre Dame hosted events in Indiana in 2022 and the United Kingdom in 2023, and Notre Dame filed an amicus brief in an Argentinian court in February, 2023. *See Compl*. ¶¶ 2.1-3, 29-50.

To the extent Plaintiffs are attempting to plead intentional infliction of emotional distress (IIED), such attempted claim still must be dismissed. This tort "requires a person to have (1) intentionally or recklessly, (2) engaged in extreme and outrageous conduct, that (3) causes, (4) severe emotional distress to another." *Yudkin*, 2015 WL 13739360, at *12. Indiana courts "teach that 'the requirements to prove this tort are rigorous.'" *Id.* (quoting *Lindsey v. DeGroot*, 898 N.E.2d 1251, 1264 (Ind. Ct. App. 2009)); *see also Fields v. Town of Merrillville*, 2022 WL 17729987, at *7 (N.D. Ind. Dec. 15, 2022). The tort of IIED requires, among other elements, that the defendant have the intent to harm **the Plaintiffs**, and not some general group of 1.74 billion people to which Plaintiffs allegedly belong. *See Cullison v. Medley*, 570 N.E.2d 27, 31 (Ind. 1991) ("It is the intent to harm one emotionally that constitutes the basis for the tort of an intentional infliction of emotional distress."); *Lachenman v. Stice*, 838 N.E.2d 451, 457 (Ind. Ct. App. 2005) ("Moreover, there is nothing in the record which would support a reasonable inference to the effect that the Stices intended to cause *Lachenman* emotional distress by their behavior.") (emphasis added); *see*

16

*also* cmt. l, *Restatement (Second) of Torts* §46 (1977) (where conduct is directed at a third person, liability may only arise "to plaintiffs who were present at the time" of such conduct and only where "the actor may know that it is substantially certain, or at least highly probable, that [defendant's conduct towards a third party] will cause severe emotional distress *to the plaintiff*")(emphasis added).

In addition, liability for IIED only may lie where "the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Fox v. Franciscan Alliance, Inc.*, 204 N.E.3d 320, 329 (Ind. Ct. App. 2023) (quoting *Lachenman*, 838 N.E.2d at 456-57). Whether the conduct at issue meets this standard "can, in appropriate cases, be decided as a matter of law" on a motion to dismiss. *Yudkin*, 2015 WL 13739360, at *13 (dismissing IIED claims). Here, the statements made by Notre Dame regarding the experiences of Uyghurs in China are supported by numerous third-party sources, with the amicus brief alone containing 194 footnotes to such sources. *See generally* Exhibit A. As a matter of law, such statements do not satisfy the rigorous criteria for IIED. *Cf. Fields*, 2022 WL 17729987, at *7 (dismissing IIED claims because "it is doubtful that [plaintiff] could allege any facts to support this claim" given that "probable cause existed to believe [plaintiff] was guilty of domestic battery").

### E. Plaintiffs Should Not Be Given Leave To Re-Plead

Plaintiffs' Complaint should be dismissed with prejudice, without leave to replead, because granting leave to amend would be futile. *Gregory v. Cosgray*, 2025 WL 2390483, *2 (N.D. Ind. Aug. 15, 2025); *Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 432 (7th Cir. 2009) ("[C]ourts have broad discretion to deny leave to amend where … the amendment would be futile."); *Gookins v. County Materials Corp.*, 2019 WL 6724599, *1 (S.D. Ind. Dec. 10, 2019) (denying leave to amend on futility grounds). Here, no amount of repleading can change the operative facts here, so

permitting an amendment would be futile.

## V. CONCLUSION

As in *Biden*, Plaintiffs here lack standing to assert their claims. They themselves have not been injured in any particularized and concrete way, as is clear from the fact that they seek damages on behalf of essentially 20% of the entire planet's population. In addition, none of their purported claims are ones for which relief can be granted. They themselves have not been defamed, and they complain about statements made in judicial proceedings. In addition, they assert claims that are not cognizable under Indiana law. For all these reasons, their Complaint should be dismissed with prejudice and without leave to replead.

WHEREFORE, Notre Dame respectfully requests that the Court dismiss Plaintiffs' complaint, with prejudice, and without leave to replead.

Dated: September 9, 2025.                      Respectfully submitted,

**BARNES & THORNBURG LLP**

*/s/ Brian E. Casey*
Brian E. Casey (Atty. No. 23263-71)
brian.casey@btlaw.com
201 S. Main Street, Suite 400
South Bend, IN 46601
Telephone: (574) 233-1171
Facsimile: (574) 237-1125

*Counsel for University of Notre Dame*

## CERTIFICATE OF SERVICE

  I hereby certify that on September 9, 2025, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all parties and counsel of record. In addition, the foregoing was also sent via First-class mail, postage prepaid, and by electronic mail, to the following:

    Bing Chen
    Jie Chen
    11169 Captains Walk Court
    North Potomac, MD 20878
    lawyerchen518@gmail.com
    usprei2017@gmail.com


        */s/Brian E. Casey*
        Brian E. Casey